IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JAMES TERRELL, and ANICE TERRELL, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 2:22-cv-02811-JPM-cgc ) |
| FREEDOM MORTGAGE CORPORATION; and THE FEDERAL SAVINGS BANK, A FEDERAL SAVINGS BANK, | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF LAW
IN SUPPORT OF FREEDOM MORTGAGE CORPORATION'S MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Freedom Mortgage Corporation ("Freedom") submits its memorandum of law in support of its motion to dismiss the Complaint (Doc. 1, cited to as "Compl.") of Plaintiffs James Terrell and Anice Terrell (collectively, the "Plaintiffs") and further states as follows:

**SUMMARY OF GROUNDS**

The Plaintiffs' allegations fail to state any wrongdoing by Freedom and, indeed, only demonstrate that Freedom performed its obligations under the Plaintiffs' residential loan consistent with Regulation X of the Real Estate Settlement Procedures Act ("RESPA"). This dispute involves allegations that Freedom mismanaged Plaintiffs' escrow account under their residential loan by paying real property taxes that were purportedly not owed. Specifically, one of the Plaintiffs claims to be exempt from real property taxes, but the Plaintiffs conflate an "exemption" with the reimbursements provided under the Tennessee Tax Relief Program (the "Tax Relief Program"). Under this program, real property taxes must still be paid to receive relief in the form of a

reimbursement. Because these real property taxes must be paid, Regulation X obligates Freedom to pay these taxes in a timely manner through the loan's escrow account, which it did.

Plaintiffs allege that Freedom should not have paid these real property taxes because of their claimed exemption, alleging that charges for these taxes on their escrow account amounted to a breach of fiduciary duty and failure to manage their escrow account under Regulation X. Plaintiffs further allege that Freedom failed to respond to notices of error under Regulation X where the Plaintiffs argued for removal of taxes from their escrow account. As a matter of Tennessee law, a financial institution does not owe a fiduciary duty to its customer. Likewise, a private right of action does not exist under 12 U.S.C. § 1024.34 ("Section 1024.34"), obligating Freedom to timely make escrow payments, or 12 U.S.C. § 1024.35 ("Section 1024.35"), obligating Freedom to respond to notices of error.  Putting aside Plaintiffs' lack of a private right of action, Plaintiffs' claims also fail to allege violations of Sections 1024.34 and 1024.35. They fail to allege Freedom made untimely escrow payments in violation of Section 1024.34; indeed, all evidence before this Court confirms that Freedom made these payments. Further, Plaintiffs fail to allege sending their notices of error to Freedom's designated address, which is necessary to obligate Freedom to perform under Section 1024.35. Therefore, this Court should dismiss Plaintiffs' claims against Freedom, *with prejudice*.

## SUMMARY OF FACTUAL ALLEGATIONS AND RECORDS

On February 22, 2021, Plaintiffs executed a Deed of Trust ("Deed of Trust") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), solely acting as nominee for Lender/co-defendant Federal Savings Bank ("FSB") and its successors and assigns, for a residential loan securing real property commonly known as 4789 Painted Oak Cove, Memphis Tennessee 38116 (the "Property"), recorded in the Register of Deed's Office as Instrument 21027073. (See the recorded Deed of Trust attached as **Exhibit 1**.) Section 3 of the Deed of Trust

obligates the Plaintiffs to make monthly payments for "Escrow Items," which include real property taxes. (Ex. 1.) Plaintiff James Terrell ("Mr. Terrell") is allegedly exempt from real property taxes under the Tax Relief Program. (Compl., ¶¶ 7, 13.) In June of 2021, Mr. Terrell allegedly called Freedom as a reminder of Mr. Terrell's tax exempt status. (Compl., ¶ 11.) On or about August 30, 2021, Freedom sent Plaintiffs a letter stating: "You have been approved for a full tax exemption for the 2021 year." (Compl., Ex. B.)

However, the Tax Relief Program is not an exemption of taxes, but rather a reimbursement of taxes once paid. (See Tennessee Tax Relief Program attached as **Exhibit 2**.)[1] Plaintiffs even admit that the "Tax Relief Program is not a tax exemption *per se*, but rather a voucher program in which for qualifying individuals the taxes are paid to the respective taxing authority out of a special appropriations fund set aside by the Tennessee State Legislature." (Compl., ¶ 13 [emphasis in original].) In short, the Legislature pays the taxing authority for the taxes paid by an individual, which the individual receives as a reimbursement only after the taxes are paid. (Ex. 2; Compl., ¶ 13.)

In October of 2021, Mr. Terrell requested that all taxes be removed from his escrow account, to which Freedom responded by issuing a new escrow analysis setting the Plaintiffs' monthly mortgage payment as $1,076.98 starting on November 1, 2021. (Compl., ¶¶ 14–15.) In March of 2021, Mr. Terrell again requested that all taxes be removed from his escrow account, and Freedom allegedly responded that all City taxes would be removed. (Compl., ¶¶ 18–20.) On

---

[1] This Court may consider this website from the Tennessee Comptroller of the Treasury (https://comptroller.tn.gov/office-functions/pa/property-taxes/property-tax-programs/tax-relief.html) and take judicial notice of information posted on the website since it is an official public website of a government agency. Arvest Bank v. Byrd, 814 F. Supp. 2d 775, 787 n.4 (W.D. Tenn. 2011) (taking judicial notice of contents of Arkansas Secretary of State's website); Bradley v. Jefferson Cnty. Pub. Sch., 598 F. Supp. 3d 552 (W.D. Ky. 2022) (collecting cases). Furthermore, the Plaintiffs cite to this exact website in their Complaint so this Court can consider same. (Compl., ¶ 13 n.1.)

3

March 10, 2022, Freedom notified the Plaintiffs that their negative escrow balance must be paid in full prior to removal, to which Mr. Terrell responded that he would continue to pay the $1,076.98 monthly payment. (Compl., ¶¶ 21–22.) On May 1, 2022, Plaintiffs' monthly mortgage payment increased to $1,441.15 but Plaintiffs only paid $1,076.98. (Compl., Ex. C.)

On May 2, 2022, the Plaintiffs sent a notice of error (the "First Notice of Error") detailing two alleged errors: (1) Freedom overpaid Plaintiffs' insurance premium by $105.09 in November of 2021[2]; and (2) Freedom removed taxes from the escrow account, purportedly causing an escrow shortage by reducing their escrow payment, despite this being removed upon the Plaintiffs' request due to their "exemption" under the Tax Relief Program. (Compl., Ex. D.) Purportedly, Freedom did not respond to the First Notice of Error prior to Mr. Terrell sending another notice of error. (Compl., ¶ 26.) Plaintiffs addressed the First Notice of Error to: "Freedom Mortgage, P.O. Box 22670, Rochester, NY 14692." (Compl., Ex. E.) However, Freedom's designated address for receiving notices of error is "P.O. Box 50428, Indianapolis, Indiana 46250-0401" (the "Designated Address"). (See a true and accurate copy of Freedom's website displaying its Designated Address attached as **Exhibit 3**.)[3]

---

[2] Plaintiffs do not allege a violation of RESPA for allegedly overpaying Plaintiffs' insurance premium. (See generally Compl.)

[3] The Court may consider this website (https://www.freedommortgage.com/contact) and its contents because they are central to Plaintiffs' claims of sending two notices of error to Freedom, considering that a notice of error must be sent to Freedom's Designated Address under Section 1024.35. See Shaughnessy v. Interpublic Grp. of Cos., 506 F. App'x 369, 372 (6th Cir. 2012). Furthermore, the contents of the site are capable of judicial notice since they cannot be reasonably questioned, because Section 1024.35 requires Freedom to post its designated address on its website. See id.; Fed. R. Evid. 201(b)(2). In a similar situation, other district courts have granted a Rule 12(b)(6) motion by taking judicial notice of a servicer's website stating its designated address. See Basora v. JPMorgan Chase Bank, 202 F. Supp. 3d 1328, 1331–32 (S.D. Fla. 2016); see also Best v. Ocwen Loan Servicing, LLC, No. 15-CV-13007, 2016 WL 125875, at *4 (E.D. Mich. Jan. 12, 2016), aff'd, No. 16-1217, 2016 WL 10592245 (6th Cir. Nov. 29, 2016) (taking judicial notice of the fact that plaintiff was aware of designated address).

On June 4, 2022, Mr. Terrell sent a second notice of error (the "Second Notice of Error") detailing three alleged errors: (1) Freedom failed to accept the Plaintiffs' payment of $1,076.98 on May 6, 2022 because Freedom's payment of real property taxes increased their mortgage payment to $1,441.15 beginning on May 1, 2022; (2) Freedom imposed an invalid late fee for the May 1, 2022 payment; and (3) Freedom improperly charged the Plaintiffs' escrow account for taxes subject to the "exemptions" under the Tax Relief Program. (Compl., Ex. E.) Plaintiffs addressed the Second Notice of Error to: "Freedom Mortgage, Customer Care, P.O. Box 50485, Indianapolis, Indiana 46250-0485." (Compl., Ex. E.) Again, this Second Notice of Error was not addressed to Freedom's Designated Address.[4]

On July 7, 2022, Mr. Terrell purportedly received a letter from Freedom stating that Freedom verified that Shelby County and the City of Memphis approved the Plaintiffs for tax exemption. (Compl., ¶ 28.) However, this letter goes on to clarify that "the state of Tennessee requires the taxes to be billed at the full amount and then the state refunds the agency, which in turn refunds the homeowners." (See July 7, 2022 Notice of Error Response Letter ("First NOE Response Letter") attached as **Exhibit 4**.)[5] Because the Tax Relief Program is a reimbursement of taxes paid, Freedom concluded that it could not remove taxes from Plaintiffs' escrow account. (Ex. 4.)

---

[4] On June 8, 2022, Freedom notified the Plaintiffs that it had received the City of Memphis tax documents showing payments made for the 2021 tax year. (Compl., ¶ 27.)

[5] This Court may consider the First NOE Response Letter because Plaintiffs referred to it in their Complaint and it is indisputable that this document is central to their claims. Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997) ("[A] defendant may introduce certain pertinent documents if the plaintiff fails to do so.") overruled on other grounds, Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); see Shaughnessy v. Interpublic Grp. of Cos., 506 F. App'x 369, 372 (6th Cir. 2012).

On July 8, 2022, Mr. Terrell allegedly received a letter from Freedom acknowledging receipt of a Notice of Error and its intent to respond. (Compl., ¶ 29.) On July 19, 2022, Mr. Terrell received another letter from Freedom stating that it would continue to include real property taxes in the Plaintiffs' escrow account ("Second NOE Response Letter"). (See Second NOE Response Letter attached as **Exhibit 5**.)[6] The Second NOE Response Letter reiterated that Freedom could not remove taxes from the escrow account because the "state of Tennessee requires that taxes be billed at the full amount, and then the state issues a refund to the customer. As such, we are required to collect the necessary funds needed to make these disbursements to the taxing authorities[.]" (Ex. 5.) On November 21, 2022, Plaintiffs filed a three count complaint against Freedom and FSB for (1) breach of fiduciary duty, (2) violations of RESPA, and (3) vicarious liability of the principal (FSB).[7] Plaintiffs' allegations, however, do not state any wrongdoing by Freedom, and thus, their Complaint against Freedom is due to be dismissed in its entirety *with prejudice*.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). "[T]he court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and

---

[6] Plaintiffs allege that this letter is attached as Exhibit G to the Complaint, but Plaintiffs have not filed this Exhibit G. (See generally Compl.) Nevertheless, this Court may consider the Second NOE Response Letter because Plaintiffs referred to it in their Complaint and, by purporting to attach it as an Exhibit G, it is indisputable that this document is central to their claims. Weiner, 108 F.3d at 89; see Shaughnessy, 506 F. App'x at 372.

[7] Freedom does not individually address the third count since it is only alleged against FSB, although this count is also due to be dismissed since its allegations are dependent upon counts one and two, which as discussed herein, are due to be dismissed with prejudice.

exhibits attached to the complaint, also may be taken into account . . . . **[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or her] claim**." Shaughnessy v. Interpublic Grp. of Cos., 506 F. App'x 369, 372 (6th Cir. 2012) (emphasis added).[8] Relevant to this case in particular, a court may consider matters outside of the pleadings capable of judicial notice, including matters of public record such as deeds of trust, government websites, and other websites that cannot be reasonably disputed. See Signature Combs, Inc. v. U.S., 253 F.Supp.2d 1028, 1041 (W.D. Tenn. 2003); see Thomas v. Noder-Love, 621 F. App'x 825, 829 (6th Cir. 2015); S & M Homes, LLC v. Chicago Title Ins. Co., No. 212CV03057JPMTMP, 2014 WL 12634492, at *7 (W.D. Tenn. Mar. 14, 2014), aff'd, 623 F. App'x 722 (6th Cir. 2015).

Under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs. Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). However, a "legal conclusion couched as a factual allegation," need not be accepted as true. Twombly, 550 U.S. at 555. A plaintiff's obligation to provide the "grounds" for the requested relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.; see also Ass'n of Cleveland Fire Fighters vs. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft

---

[8] See also Wiggins v. Ocwen Loan Servicing, LLC, 722 F. App'x 415, 417 n.1 (6th Cir. 2018) ("We draw some of these facts that are outside the four corners of the complaint from documents Ocwen presented to the district court, namely plaintiff's loan modification application and public records regarding her foreclosure. As the district court correctly found (and as uncontested by plaintiff), these documents are ripe for consideration at the motion-to-dismiss stage because they were either (a) public records subject to judicial notice, or (b) referred to in the complaint and central to plaintiff's claims." ).

v. Iqbal, 556 U.S. 662, 678 (2009). In short, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. (internal quotation marks and citation omitted). In the instant action, any allegations that are sufficiently pled, and thus, to be accepted as true, do not state a claim for relief. Based on the foregoing and the reasons detailed within, Plaintiffs' claims must be dismissed in their entirety.

## LAW AND ARGUMENT

### I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER REGULATION X.

#### A. Sections 1024.34 And 1024.35 Of Regulation X Do Not Create A Private Right Of Action.

Plaintiffs allege that Freedom did not comply with its duties under Regulation X by allegedly mishandling their escrow account and failing to respond to their Notices of Error.[9] (Compl., ¶¶ 43, 44.) RESPA's Regulation X governs their allegations. See 12 C.F.R. §§ 1024.34 and 1024.35. Although some sections in Regulation X provide a private right of action, Sections 1024.34 and 1024.35 do not.

Private citizens generally cannot sue to enforce federal law unless Congress provided a private cause of action. See e.g., Alexander v. Sandoval, 532 U.S. 275, 288–89 (2001). Sixth Circuit courts interpret regulations, such as Sections 1024.34 and 1024.35, in the same manner as they interpret statutes. Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan, 32 F.4th 548, 557–58 (6th Cir. 2022). When construing statutes, the Supreme Court has stated that Congress knows how to impose a requirement, and "[w]here Congress has chosen not to do so," a court should not "override that choice[.]" Whitfield v. United States, 543 U.S. 209, 216 (2005); see also Alexander, 532 U.S. at 290 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."). Applying this

---

[9] RESPA previously referred to a Notice of Error as a Qualified Written Request, commonly called a QWR.

principle, where a regulation uses particular language in one section, the omission of that language in another section is presumed to be intentional and purposeful. Delek US Holdings, Inc. v. United States, 32 F.4th 495, 501 (6th Cir. 2022) (citing BFP v. Resol. Tr. Corp., 511 U.S. 531, 537 (1994)).

Here, Sections 1024.34 and 1024.35 do not expressly provide a private right of action. However, another section of Regulation X (12 C.F.R. § 1024.41) explicitly states that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. § 1024.41(a). Since this private enforcement language is missing from Sections 1024.34 and 1024.35, Sections 1024.34 and 1024.35 cannot be interpreted to create private rights of action. Under this same rationale, a sister district court in Tennessee found that no private right of action exists under Section 1024.35. Roes v. Specialized Loan Servicing, LLC, No. 1:17-CV-00246, 2018 WL 3636543, at *3 (E.D. Tenn. July 31, 2018) ("While § 2605 generally provides a private right of action for RESPA violations, 12 C.F.R. § 1024.35 does not. Other sections promulgated under RESPA, such as 1024.41, explicitly provide a private cause of action by referring to remedies under § 2605(f). However, § 1024.35 makes no such reference and therefore does not provide a private right of action.").

While the Sixth Circuit does not have binding precedent on these issues, other federal courts have similarly found that Sections 1024.34[10] and 1024.35[11] do not create private rights of

---

[10] See e.g., Carter v. CrossCountry Mortg., Inc., No. 18-12714, 2019 WL 3958275, at *5 (E.D. Mich. Aug. 21, 2019).

[11] See e.g., Willson v. Bank of Am., N.A., No. 15-14303-CV, 2016 U.S. Dist. LEXIS 188647, at *21 (S.D. Fla. May 2, 2016) ("While § 2605 generally provides a private right of action for RESPA violations, 12 C.F.R. § 1024.35 does not."); Fossett v. Fay Servicing LLC, No. 4:16-CV-0374-HLM-WEJ, 2017 U.S. Dist. LEXIS 188100, at *3–4 (N.D. Ga. May 4, 2017) ("Regulation X does not provide for a private cause of action for an alleged violation of § 1024.35"); Kilgore v Ocwen Loan Servicing, LLC, 89 F. Supp. 3d 526, 538 n.4 (E.D.N.Y. 2015); Miller v. HSBC Bank U.S.A., N.A., No. 13 Civ. 7500, 2015 WL 585589 (S.D.N.Y. Feb. 11, 2015) ("Miller's 'claim' based upon 12 C.F.R. § 1024.35 also fails because that regulation does not provide a private right of action for damages.'"); Couch v. PHH Mortg. Corp., No. 4:19-CV-935-A, 2021 U.S. Dist. LEXIS 10087, at *6 (N.D. Tex. Jan. 20, 2021); Garza v. Dhi Mortg. Co., No. 4:19-CV-00780-SDJ-CAN, 2020 U.S.

action. Furthermore, other federal courts addressing other Regulation X sections have held that its inclusion of a private right of action in some sections does not provide or imply a private right of action in Regulation X's other sections that do not expressly include a private right of action.[12] That analysis applies equally to Sections 1024.34 and 1024.35, which do not explicitly provide a private right of action. Given the abundance of authority from other courts, and the fact that Section 1024.34 and 1024.35 do not explicitly provide a private right of action when other sections do, this Court should dismiss Plaintiffs' Section 1024.34 and 1024.35 claims for lack of a private right of action.

---

Dist. LEXIS 243676, at *22 n.6 (E.D. Tex. Nov. 12, 2020); Ayati-Ghaffari v. Dimon, No. 4:19-CV-00533-ALM-CAN, 2020 U.S. Dist. LEXIS 40297, at *24 (E.D. Tex. Jan. 13, 2020); Brown v. Bank of New York Mellon, No. 1:16-CV-194(LMB/IDD), 2016 WL 2726645, at *2 (E.D. Va. May 9, 2016) "12 C.F.R. §§ 1024.35, 1024.39, and 1024.40 do not explicitly provide a cause of action to private individuals").

[12] The Eleventh Circuit has addressed other RESPA sections and held that RESPA's inclusion of a private right of action in some sections does not provide or imply a private right of action to RESPA's other sections that do not expressly include a private right of action. Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1360 (11th Cir. 2006); see also Collins v. FMHA-USDA, 105 F.3d 1366, 1367–68 (11th Cir. 1997). Other courts, including the United State Court of Appeals for the Fifth Circuit, have held that no private right of action exists to enforce violations of 12 C.F.R. §§ 1024.38, 1024.39, and 1024.40. Gresham v. Wells Fargo Bank, N.A., 642 F. App'x 355, 359 (5th Cir. 2016) ("Unlike Section 1024.41, Section 1024.39 does not explicitly convey a private right of action to borrowers"); Brown v. Bank of N.Y. Mellon, No. 1:16-CV-194(LMB/IDD), 2016 U.S. Dist. LEXIS 61467, (E.D. Va. May 9, 2016) ("Defendant correctly argues 12 C.F.R. §§ 1024.35, 1024.39, and 1024.40 do not explicitly provide a cause of action to private individuals."); Trudell v. Carrington Mortg. Servs., L.L.C., No. 1:16-CV-10441TLLPTM, 2016 U.S. Dist. LEXIS 143428, (E.D. Mich. Sept. 27, 2016), report and recommendation adopted, No. 16-CV-10441, 2016 U.S. Dist. LEXIS 14315 (E.D. Mich. Oct. 17, 2016) ("What Plaintiff does not acknowledge is that § 1024.40 provides no private right of action whatsoever"); Schmidt v. PennyMac Loan Servs., LLC, 106 F. Supp. 3d 859, 871 (E.D. Mich. May 20, 2015) (discussing the regulatory history of § 1024.40 and finding no intention to create a private right of action); see also Wilson v. Bank of Am., N.A., No. 15-14303-CV, 2016 U.S. Dist. LEXIS 188647 (S.D. Fla. May 2, 2016); Miller v. HSBC Bank U.S.A., N.A., No. 13 CIV. 7500, 2015 U.S. Dist. LEXIS 16736 (S.D.N.Y. Feb. 11, 2015) (12 C.F.R. § 1024.35, which incorporates violations of § 1024.39, does not provide a private right of action for damages).

### B. Plaintiffs Fail To State A Claim Under Section 1024.34.

Section 1024.34 does not apply to Plaintiffs' allegations. Section 1024.34 obligates a servicer to make timely escrow payments, but it does not govern whether a servicer can collect funds from borrowers for escrow payments made by the servicer. 12 C.F.R. § 1024.34. This is clear from Section 1024.34's plain language:

> If the terms of a mortgage loan require the borrower to make payments to the servicer of the mortgage loan for deposit into an escrow account to pay taxes, insurance premiums, and other charges for the mortgaged property, the servicer shall make payments from the escrow account in a timely manner, that is, on or before the deadline to avoid a penalty, as governed by the requirements in § 1024.17(k).

12 C.F.R. § 1024.34 (a).[13]

Plaintiffs rely upon Section 1024.34(a) but do not allege that Freedom failed to make escrow payments. (See generally Compl.) Indeed, all evidence before this Court shows that Freedom paid Plaintiffs' taxes. (Ex. 4; Ex. 5.) Instead, Plaintiffs allege that Freedom charged them for excessive escrow items because Freedom paid taxes that were "exempt." Because Section 1024.34 does not apply to these allegations, Plaintiffs' Section 1024.34 claims must be dismissed.

Should this Court look further into Freedom's obligations to manage an escrow account, this Court will find that charges for escrow items are governed by 12 U.S.C. § 2609 ("Section 2609"), not Section 1024.34 or 12 U.S.C. § 2605(g). One sister District Court made this same distinction when finding that a private right of action does not exist under Section 2609. Kevelighan v. Trott & Trott, P.C., 771 F. Supp. 2d 763, 770 (E.D. Mich. 2010) ("§ 2605(g) governs when a servicer is required to pay taxes and insurance premiums on a mortgaged property where there has been no escrow waiver; it does not govern when the servicer can collect funds from the

---

[13] The other subsection of Section 1024.34 governs the refund of an escrow account after the loan is paid in full.

borrower for such payments.") Indeed, Section § 2609 generally provides that a servicer may not require a borrower to deposit more money into an escrow account than is required to pay the escrow items, such as real property taxes, but it does not permit a borrower to recover damages for failure of a servicer to comply with this section and thus, does not create a private right of action. 12 U.S.C. § 2609. Several other district courts in this Circuit have reached this same conclusion that Section 2609 does not provide a private right of action.[14] Therefore, even if Plaintiffs sued under the appropriate section of RESPA and Regulation X for their allegations of a mismanaged escrow account, Plaintiffs would still fail to state a claim.

      **C.**      **Plaintiffs Fail To State A Claim Under Section 1024.35 Because Their Notices Of Error Were Not Addressed To Freedom's Designated Address Under Section 1024.35(c).**

Under Section 1024.35(c), a borrower must send a notice of error to the designated address of the servicer to trigger a servicer's obligation to respond. 12 C.F.R. § 1024.35(c) ("A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error in accordance with the procedures in this section."); see Best v. Ocwen Loan Servicing, LLC, No. 15-CV-13007, 2016 WL 125875, at *3 (E.D. Mich. Jan. 12, 2016), aff'd, No. 16-1217, 2016 WL 10592245 (6th Cir. Nov. 29, 2016); Basora v. JPMorgan Chase Bank, 202 F. Supp. 3d 1328, 1331–32 (S.D. Fla. 2016). Indisputably, Plaintiffs did not send their First and Second Notices of Error to Freedom's Designated Address. (Compare Compl., Ex. D–E with Ex. 3.) Therefore, Freedom cannot be liable under Section 1024.35. Accordingly, Plaintiffs fail to state their Section 1024.35 claims, and they should be dismissed with prejudice for this reason.

---

[14] See e.g., Wiesendanger v. MidAmerica Mortg., Inc., No. 1:17-CV-286-JRG-CHS, 2018 WL 11433301, at *2 (E.D. Tenn. Mar. 14, 2018); Hunter v. Washington Mut. Bank, No. 2:08-CV-069, 2008 WL 4206604, at *4 (E.D. Tenn. Sept. 10, 2008).

      **D.**      **Plaintiffs Fail To Allege That Freedom Mismanaged Their Escrow Account And Failed To Investigate Their Notices Of Error.**

The Deed of Trust obligates Plaintiffs to make escrow payments for real property taxes. (Ex. 1.) As Plaintiffs have noted in their Complaint, Section 1024.34, which is incorporated into the Deed of Trust, obligates Freedom to make timely escrow payments for taxes owed. (Ex. 1.) Because the taxes were owed and must be paid in order for reimbursement under the Tax Relief Program (Ex. 2), Freedom did not mismanage the Plaintiffs' escrow account by making payments for these taxes. Furthermore, Plaintiffs cannot claim that Freedom failed to investigate and respond to Plaintiffs' Notices of Error. Freedom responded to the Notices of Error detailing its research that the Tax Relief Program did not exempt Mr. Terrell from paying taxes, but rather reimbursed him for the taxes paid. (Ex. 4; Ex. 5.) The Tennessee Department of Commerce confirms Freedom's investigation and response to these Notices of Error. (Ex. 2.) Therefore, Plaintiffs have not plausibly alleged that Freedom failed to conduct a reasonable investigation and provide a written response detailing why Freedom determined that no error occurred. 12 C.F.R. § 1024.35(e).

**II.**      **PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.**

The duties between contracting parties arise out of the contract itself, not from common law. <u>Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n</u>, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992); <u>Harvest Corp. v. Ernst & Whinney</u>, 610 S.W.2d 727, 728 (Tenn. Ct. App. 1980) ("Insofar as a breach of contract action is concerned, it matters not a whit whether the breach was an intentional one or an unintentional one caused by negligence in attempting to perform. The action still remains in contract."). Similarly, a financial institution owes no fiduciary duty to its customers absent special facts and circumstances. <u>Glazer v. First Am. Nat. Bank</u>, 930 S.W.2d 546, 550 (Tenn. 1996); <u>Nooh v. CIT Grp. Consumer Fin., Inc.</u>, No. 17-2833-JTF-DKV, 2018 WL 3056698, at *5 (W.D. Tenn. Apr. 5, 2018), <u>report and recommendation adopted</u>, No.

217CV02833JTFDKV, 2018 WL 2336294 (W.D. Tenn. May 23, 2018) ("no fiduciary relationship arises between a lender and a borrower"); Power & Tel. Supply Co. v. Suntrust Banks, Inc., No. 03-2217 M1/V, 2005 WL 1329208, at *2 (W.D. Tenn. May 10, 2005) ("[A] fiduciary duty does not exist as a matter of law between a bank and its customers.").

No special facts and circumstances exist here. Power & Tel. Supply Co. v. SunTrust Banks, Inc., 447 F.3d 923, 932 (6th Cir. 2006) ("Tennessee common law generally does not impose fiduciary or similar duties on banks with respect to their customers, depositors, or borrowers absent special circumstances."). See generally Mhoon v. U.S Bank Home Mortg., No. 12-CV-03053-JPM-TMP, 2013 WL 6858680, at *4 (W.D. Tenn. Dec. 30, 2013) (observing that Tennessee law does not impose a common law duty, let alone a fiduciary duty, upon a bank with respect to their customers absent special circumstances). An example of special facts and circumstances is "a customer who reposed an unusual degree of trust and confidence in an overreaching banker." Oak Ridge Precision Indus., Inc. v. First Tennessee Bank Nat. Ass'n, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992). However, this Court has not found that special facts and circumstances exist when the alleged actions do not expand beyond the contractual duties under the Deed of Trust, such as the management of an escrow account. See e.g., Sandlin v. CitiMortgage, Inc., No. 219CV02368JTFATC, 2021 WL 1581771, at *11 (W.D. Tenn. Mar. 1, 2021), report and recommendation adopted, No. 219CV02368JTFATC, 2021 WL 1156627 (W.D. Tenn. Mar. 26, 2021) (rejecting argument for fiduciary duty despite allegations of incorrect escrow balance); Johnson v. Synovus Bank, No. 2:14-CV-2950-STA-DKV, 2015 WL 4041648, at *10 (W.D. Tenn. July 1, 2015) (dismissing negligence claims based upon alleged duties under modification agreement including obligation to provide escrow waiver). See generally Fed. Nat. Mortg. Ass'n v. Carr, No. 3:12-CV-1295, 2013 WL 5755083, at *4 (M.D. Tenn. Oct. 23, 2013) (dismissing negligence claims based upon "performance of [borrower's] mortgage loan"). Because the Deed

14

of Trust obligates Plaintiffs to pay for Escrow Items and Freedom to disburse amounts for the Escrow Items, including real property taxes (Ex. 1), Plaintiffs cannot allege a breach of fiduciary duty for allegedly charging more on the escrow account than should be owed.

Moreover, Tennessee courts "are leery of imposing a state common law duty based on a federal statute lacking a private right of action." Harris v. Nationwide Mut. Fire Ins. Co., 367 F. Supp. 3d 768, 776 (M.D. Tenn. 2019). As demonstrated in the prior section, no private right of action exists under Sections 1024.34 and 1024.35. Thus, no common law duty, let alone a fiduciary duty, can exist for failure to comply with Sections 1024.34 and 1024.35. Accordingly, this Court should dismiss Plaintiffs' Breach of Fiduciary Duty claim, *with prejudice*.

## CONCLUSION

Based on the foregoing, Freedom respectfully requests that this Court grant its Motion to Dismiss and enter an Order dismissing the claims filed by the Plaintiffs against it, *with prejudice*.

Respectfully submitted,

/s/ Joseph V. Ronderos
Shaun K. Ramey
Joseph V. Ronderos
McGlinchey Stafford
424 Church St., Suite 2000
Nashville, TN 37219
(615) 762-9044 (telephone)
(615) 523-1725 (facsimile)
sramey@mcglinchey.com
jronderos@mcglinchey.com
*Attorneys for Freedom Mortgage Corporation*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on January 9, 2023, I electronically filed the foregoing with the Clerk of the Court using the e-filing system, which will send a notification of such filing to the following:

Bruce A. Ralston
L. Dan Buchanan
Ralston Buchanan Consumer Law Group
2670 Union Ext'd, #1228
Memphis, TN 38112
Bruce@RBConsumerLaw.com
Dan@RBConsumerLaw.com
*Attorneys for Plaintiffs*

                /s/Joseph V. Ronderos
                OF COUNSEL